## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DOUGLAS MEADE,**

           **Plaintiff,**                      **Case No. 18-cv-11347**

        **v.**                          **District Judge Victoria A. Roberts**

**COMMISSIONER OF**               **Magistrate Judge Mona K. Majzoub**
**SOCIAL SECURITY,**

           **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Douglas Meade seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that he is not entitled to benefits under the Social Security Act. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 15). This matter has been referred to the undersigned for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 3.) Having reviewed the pleadings, the Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and issues this Report and Recommendation.

## I.    RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 15) be **GRANTED**, and that the case be dismissed in its entirety.

## II.       PROCEDURAL HISTORY

Plaintiff applied for Supplemental Security Income ("SSI") on January 26, 2015, alleging that he has been disabled since June 1, 2008.  (TR 307–312.)  The Social Security Administration initially denied Plaintiff's claims on July 10, 2015.  (TR 177–192.)  On July 27, 2016, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ") Paul Sher.  (TR 84–152.)  Plaintiff appeared for a supplemental hearing before the ALJ on June 21, 2017.  (TR 38–81.)

On September 5, 2017, the ALJ issued an unfavorable decision on Plaintiff's claims.  (TR 15–31.)  Plaintiff requested review by the Appeals Council, which was denied on March 16, 2018.  (TR 1–3.)  On May 1, 2018, Plaintiff commenced this action for judicial review.  (Docket no. 1.)  The parties filed cross motions for summary judgment, which are currently before the Court.  (Docket no. 13; docket no. 15.)

## III.      HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of his medical issues.  (Docket no. 13, pp. 3–5.)  In addition, the ALJ summarized Plaintiff's medical record (TR 18–29), and Defendant provided its own recitation of the facts (docket no. 15, pp. 4–5).  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record.  Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

2

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff did not engage in substantial gainful activity since the application date.  (TR 18.)  In addition, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease, diabetes mellitus, hypertension, polyneuropathy, obesity, major depressive disorder, panic disorder, left shoulder tear, generalized anxiety disorder, and cocaine use disorder."  (*Id*.)  Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (TR 19.)  The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a), subject to the following non-exertional limitations:

- Plaintiff can only occasionally stoop, kneel, crouch, and crawl.

- Plaintiff can occasionally reach overhead with his left upper extremity.

- Plaintiff can only perform unskilled work that is limited to simple, routine, and repetitive tasks, involving only simple, work-related decisions and few, if any, workplace changes.

- Plaintiff should be limited to only occasional interactions with supervisors, co-workers, and the public.

(TR 22.)  Based on this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that a person with Plaintiff's RFC could perform the requirements of jobs that exist in significant numbers in the national economy, including assembler, sorter/packer, machine operator, and surveillance monitor.  (TR 30–31.)  Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since the alleged onset date.  (TR 31.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").  "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the

conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C.    Analysis

Plaintiff contends that the ALJ failed to give good reasons for discounting the opinion of his treating podiatrist, Dr. Andrea Rinker.  (Docket no. 13, pp. 8–21.)

Under the treating physician rule, the ALJ will give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

If the ALJ declines to give a treating source's opinion controlling weight, she must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). But the ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide "good reasons" for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion. *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017); 20 C.F.R. § 404.1527(d)(2). Such good reasons must be "supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions*, SSR 96-2p (S.S.A. July 2, 1996).

Doctor of Podiatric Medicine Andrea Rinker treated Plaintiff from June of 2013 through November of 2016. (TR 484–90, 622–24, 721.) On a typical visit, Dr. Rinker debrided calluses on Plaintiff's feet and advised Plaintiff regarding shoes and insoles. (*See id.*) In an opinion dated November 28, 2016, Dr. Rinker diagnosed Plaintiff with "painful neuropathy [and] abnormal foot type." (TR 722–25.) Dr. Rinker opined that Plaintiff could not walk one block, could stand for only ten minutes at a time, could sit for only two hours in an eight-hour workday, could stand

and/or walk for only two hours in an eight-hour workday, required the option to change from sitting to standing at will, and needed to elevate his legs for two to three hours in an eight-hour workday. (*Id.*)

The ALJ gave Dr. Rinker's opinion only "little weight" and declined to adopt the limitations she proposed. (TR 28.) In support, the ALJ stated that the proposed limitations were "internally inconsistent and inconsistent with the totality of the evidence of record." (*Id.*) Regarding internal inconsistency, the ALJ emphasized that "Dr. Rinker indicated she was unsure how long with [*sic*] the claimant could sit in one place, but then she opined the claimant could only sit for two hours total." (*Id.*) As to inconsistency with the record as a whole, the ALJ gave "great weight" to the opinion of consultative examiner Dr. Montasir, who opined that Plaintiff had limited ability to walk and lift but no limitation on sitting (TR 585–88), and "partial weight" to the opinion of Dr. Buchman, who proposed that Plaintiff could not stand for prolonged periods but could shop, travel, walk one block, and use public transportation (TR 678–681). (TR 28.) In addition, the ALJ discounted Dr. Rinker's opinion because "her treatment has been limited to issues with his feet related to his diabetes." (TR 28–29.)

On review of the evidentiary record, the ALJ's decision sufficiently explains the reasons that he declined to adopt Dr. Rinker's proposed limitations.

First, the ALJ found it to be inconsistent that Dr. Rinker could not determine how long Plaintiff could sit at one time but opined that Plaintiff could only sit for a total of two hours in an eight-hour workday. While Dr. Rinker might be able to explain this discrepancy, her opinion contains no such explanation. This issue exposes a broader problem with Dr. Rinker's opinion—a lack of analysis regarding the objective bases for the limitations she proposes. Is the sitting

7

limitation necessary because of Plaintiff's diabetic nerve pain?  Because of his back condition?  Dr. Rinker's report left the ALJ to guess.

Next, as the ALJ observed, Plaintiff's medical records contain multiple benign or moderate observations.  (TR 24.)  Dr. Rinker and Plaintiff's other podiatrist Dr. Lewin routinely treated Plaintiff's feet by debriding callouses and monitoring Plaintiff's footwear.  (TR 484–90, 622–24, 721, 730–42.)  Likewise, over the course of several visits in 2015–16, Dr. Mahmood Moosa and N.P. Jan Hiser observed that Plaintiff's lower extremities showed no tenderness or defect, no joint effusion, normal range of motion, and normal muscle strength and tone.  (*See*, *e.g.*, TR 673–74.)

Finally, the ALJ properly observed that at least some of Dr. Rinker's proposed limitations (for example, those related to Plaintiff's shoulder condition) exceeded the scope of her podiatry expertise.  Again, while some of Dr. Rinker's proposed limitations may be podiatry-related, her opinion fails to connect the proposed limitations to Plaintiff's underlying impairments.

Accordingly, the ALJ stated good reasons for declining to adopt Dr. Rinker's proposed limitations.

## VI.   CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 15) be **GRANTED**, and that the case dismissed in its entirety.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard*

*v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  June 20, 2019          s/Mona K. Majzoub_____
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  June 20, 2019          s/Sandra Osorio_____
                               Acting Case Manager